Dr. Stuart WHITE and Janet White,
Plaintiffs-Respondents,

v.

CITY OF WATERTOWN, Defendant-Appellant,†

TOWNSHIP OF WATERTOWN and Township
of Watertown Chairman, Richard Gimbler,
Defendants.

Court of Appeals

*No. 2016AP2259. Submitted on briefs August 11, 2017.
—Decided October 12, 2017.*

2017 WI App 78

(Also reported in 904 N.W.2d 374.)

† Petition for Review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joseph M. Wirth* and *Matthew L. Granitz* of *Piper, Schmidt & Wirth*, Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Scott B. Rasmussen* of *Rasmussen Law Offices*, Beaver Dam.

Before Lundsten, P.J., Blanchard and Kloppenburg, JJ.

¶ 1. LUNDSTEN, P.J. Chapter 90 of the Wisconsin Statutes regulates partition fences on farming and grazing land as defined in the chapter. For ease of reading, we will frequently refer to farming and grazing land that is covered by Chapter 90 as "qualifying land."

¶ 2. Chapter 90 provides fencing specifications, requires adjoining landowners to share costs, and provides dispute-resolution procedures for these landowners. Chapter 90 makes clear that, when qualifying land is in a town, the town is responsible for administering and enforcing Chapter 90 in respect to the fencing. However, Chapter 90 is unclear as to whether cities and villages are responsible for administering and enforcing the chapter when adjoining lands are within their boundaries.

¶ 3. This lack of clarity in Chapter 90 gives rise to the dispute here between the City of Watertown and Stuart and Janet White. The Whites, who own fenced farming land in the City, argue that the City has the same duties to administer and enforce Chapter 90 that a town would have if the land were in a town. The City disagrees.

¶ 4. For the reasons explained below, we agree with the circuit court that Chapter 90 is ambiguous. We thus turn to the legislative history and, based on that history, agree with the circuit court and the Whites that, when qualifying land is in a city or village, that city or village must administer and enforce Chapter 90 the same as a town would if the land were in that town. Accordingly, we affirm the circuit court's order declaring that the City must assume Chapter 90 duties with respect to the Whites' land.

## *Background*

¶ 5. The Whites' complaint for declaratory judgment includes the following allegations:

- The Whites own land in the City that they use as a farm, including for livestock.

- Chapter 90 requires the Whites to maintain a partition fence between their land and neighboring residential properties.

- The cost and maintenance of the fence resulted in a dispute between the Whites and their neighbors.

- The Whites have a right under Chapter 90 to have the appropriate local government entity resolve this dispute.

- The Whites asked the City to assume Chapter 90 duties to resolve the dispute.

- The City has refused to assume those duties.

¶ 6. The Whites asked the circuit court to declare the parties' respective rights. The Whites argued that, read most reasonably, Chapter 90 provides that the City must assume Chapter 90 duties for land located in the City.

¶ 7. The City sought dismissal of the Whites' complaint. The City contended that the Whites' complaint against the City "must be dismissed as a matter of law because the terms of Chapter 90 apply to towns, not to cities."

¶ 8. The circuit court concluded that Chapter 90 is ambiguous and, further, agreed with the Whites that Chapter 90 is most reasonably read as applying to cities the same as to towns. The City appeals.

*Discussion*

■

¶ 9. The parties renew their dispute over the proper interpretation of Chapter 90. Statutory interpretation presents a question of law that appellate courts review de novo. *Noffke v. Bakke*, 2009 WI 10, ¶ 9, 315 Wis. 2d 350, 760 N.W.2d 156.

¶ 10. The general purpose of Chapter 90, to regulate partition fencing between property owners on agricultural lands, has not changed for more than 150 years:

> The design of that chapter of the statutes is to regulate and provide for the building and keeping in repair of division fences, and for the settlement of disputes in regard to the same. The fences contemplated by the statute are the ordinary fences of the country, built upon agricultural lands . . . .

*Brooks v. Allen*, 1 Wis. 114, [*127], 116, [*129] (1853); *Tomaszewski v. Giera*, 2003 WI App 65, ¶ 11, 260 Wis. 2d 569, 659 N.W.2d 882 (stating that "under this statute, adjoining landowners and occupants of land used for farming or grazing are generally required to

jointly maintain partition fences," and describing in general terms Chapter 90's dispute-resolution procedures).

¶ 11. Chapter 90 provides detailed requirements for what constitutes a "legal and sufficient" partition fence. *See* WIS. STAT. § 90.02.[1] In addition, Chapter 90 imposes other requirements on landowners covered by the chapter. *See, e.g.,* WIS. STAT. § 90.06 (regarding fences built before boundary line is located). Finally, as noted, Chapter 90 provides cost-sharing and dispute-resolution procedures. *See, e.g.,* WIS. STAT. §§ 90.07; 90.10; and 90.11. As we shall see, the governmental duties associated with these procedures are, for the most part, carried out by "fence viewers."

¶ 12. There is no dispute that, when qualifying land is in a town, that town is responsible for these Chapter 90 duties, that is, for administering and enforcing Chapter 90. At issue here is whether, when qualifying land is in a city or village, that city or village must discharge those Chapter 90 duties. We conclude that it must.[2]

### A. Statutory Interpretation Principles

¶ 13. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court for Dane Cty.,* 2004 WI 58,

---

[1] All references to Chapter 90 of the Wisconsin Statutes are to the 2015–16 version.

[2] The parties argue mostly in terms of cities, not cities *and villages,* but we do not understand the parties to be making a distinction between cities and villages for purposes of Chapter 90. We, too, do not make any distinction, and see no reason to make a distinction.

¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *Id.*, ¶ 45 (quoted source omitted).

¶ 14. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. Also, "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." *Id.*

¶ 15. As a corollary to this surplusage canon, courts avoid interpretations that require *inserting* words into statutes. *See Heritage Farms, Inc. v. Markel Ins. Co.*, 2009 WI 27, ¶ 14, 316 Wis. 2d 47, 762 N.W.2d 652 ("Because the legislature did not so limit the application of § 26.21(1) to railroad corporations, we will not insert those words into the statute to create such a result."); *C. Coakley Relocation Sys., Inc. v. City of Milwaukee*, 2008 WI 68, ¶ 24, 310 Wis. 2d 456, 750 N.W.2d 900 ("We will not insert the word 'correct' or 'lawful' into this plainly worded and easily understood statute.").

¶ 16. " 'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' " *Kalal*, 271 Wis. 2d 633, ¶ 46 (quoted source omitted). If, instead, statutory language *is* ambiguous, then courts examine legislative history to resolve the ambiguity. *See id.*, ¶¶ 50–51.

¶ 17. The general test for ambiguity is whether a statute can be understood by reasonable persons in two or more senses. *See id.*, ¶ 47. More specifically:

> [A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses. It is not enough that there is a disagreement about the statutory meaning; the test for ambiguity examines the language of the statute "to determine whether 'well-informed persons *should have* become confused,' that is, whether the statutory . . . language *reasonably* gives rise to different meanings."

*Id.* (citations and quoted source omitted).

¶ 18. Pertinent here, ambiguity may arise when one or more otherwise clear statutory provisions *interact to create ambiguity. See DOC v. Schwarz*, 2005 WI 34, ¶ 14, 279 Wis. 2d 223, 693 N.W.2d 703 (" '[a]mbiguity can be found . . . by the words of the provision as they interact with and relate to other provisions in the statute and to other statutes.' " (quoted source omitted)); *Warehouse II, LLC v. DOT*, 2006 WI 62, ¶ 17, 291 Wis. 2d 80, 715 N.W.2d 213 ("A statute that is plain on its face may also be made ambiguous by its interaction with other statutes.").

### B. Application of Statutory Interpretation Principles to Chapter 90

¶ 19. In the sections that follow, we:

(1) set forth pertinent provisions in Chapter 90;

(2) summarize the parties' competing interpretations of Chapter 90 and explain why we agree with the circuit court that Chapter 90 in pertinent part is ambiguous;

(3) examine Chapter 90's legislative history and conclude that, when qualifying land is in a city or village, that city or village must administer and enforce Chapter 90; and

(4) address the City's arguments that are not already addressed by that point in our opinion.

### 1. Chapter 90 Provisions

¶ 20. As noted, most governmental duties under Chapter 90 are discharged by "fence viewers." *See* WIS. STAT. §§ 90.02(1m)(h); 90.05(1)(a)2.; 90.07(1) and (2); 90.09(1)-(4); 90.10; 90.11(1)(a)-(c); 90.12; and 90.14. The first section in Chapter 90 defines "fence viewers" as follows:

> **Fence viewers.** The supervisors in their respective towns, the alderpersons of cities in their respective aldermanic districts, and the trustees of villages in their respective villages shall be fence viewers.

WIS. STAT. § 90.01; *see also* WIS. STAT. § 90.15 (stating that "fence viewer" fees "shall be set by the viewer's city, village or town").

¶ 21. Most of Chapter 90's references to "fence viewers," however, refer expressly only to *town* fence viewers. The following provisions are representative:

- WIS. STAT. § 90.07(2): "[A]pplication may be made to 2 or more fence viewers *of the town where the lands lie* or to 2 or more fence viewers *of 2 towns,* if the lands lie *in 2 towns . . . .*"

- WIS. STAT. § 90.10: "[T]he aggrieved party may complain to 2 or more fence viewers *of the town . . . .*"

- WIS. STAT. § 90.14: "In all cases where the line upon which a partition fence is to be made or to be

601

divided is the boundary line between *towns or partly in one town and partly in another* a fence viewer shall be taken from each *town* . . . ."

(Emphasis added.) Similarly, additional provisions in Chapter 90 appear to contemplate administration and enforcement only by towns:

- WIS. STAT. § 90.05(1)(a): "Every partition of a fence . . . between owners of adjoining lands, after being recorded in the *town clerk's* office . . . ."
- WIS. STAT. § 90.09(2): "The fence viewers shall file their determination in the office of the *town clerk,* who shall record the determination."

(Emphasis added.) Chapter 90 contains no parallel provisions referring expressly to fence viewers "of the city" or "of the village," or to city or village clerks.

### 2. The Parties' Interpretations of Chapter 90 and the Ambiguity in Chapter 90

¶ 22. Based on the many town-specific provisions in Chapter 90, the City argues that administration and enforcement duties under Chapter 90 plainly and unambiguously apply only to towns. The City argues: "The entirety of the statutory provisions concerning remedial and enforcement rights, powers and responsibilities discusses only towns." The City asserts that the general definition of "fence viewers" that includes city and village officials simply creates "an expansion of the pool from which towns could draw permissible 'fence viewers' to assist them in the application of their duties and responsibilities under the Chapter."

¶ 23. The Whites, in contrast, argue that Chapter 90 must be construed so that cities (and, in effect, villages) have the same duties as towns. Otherwise,

according to the Whites, Chapter 90 would be rendered unenforceable in cities (and villages), a result that makes little sense.

¶ 24. We pause here to make some observations that clarify what we understand to be the parties' arguments, based on what the parties do and do not say in their briefing.

¶ 25. First, as we understand it, the parties agree that towns lack authority to administer or enforce Chapter 90 on land located in cities and villages. The Whites assert: "[T]he Town [of Watertown] is not responsible because the City has the taxing authority (jurisdiction) over the Whites." The City asserts: "The City agrees that, as city residents, the Whites cannot seek town enforcement of Chapter 90."

¶ 26. Second, the parties appear to agree, albeit implicitly, that Chapter 90 applies to *all* qualifying land regardless of the land's location in a city, village, or town, while disagreeing on whether there is an enforcement mechanism for such land located in cities and villages. The parties' implicit agreement that there is qualifying land in cities and villages finds support in WIS. STAT. § 90.03, the section that generally determines which landowners and occupants must keep and maintain partition fences. Section 90.03 does *not* limit Chapter 90's application to land located in towns.[3]

---

[3] WISCONSIN STAT. § 90.03 does not refer to towns, cities, or villages. It provides, in part:

> **Partition fences; when required.** The respective occupants of adjoining lands used and occupied for farming or grazing purposes, and the respective owners of adjoining lands when the lands of one of such owners is used and occupied for farming or grazing purposes, shall keep and maintain partition fences be-

¶ 27. Accordingly, we understand the parties to advance the following interpretations of Chapter 90. *Both* parties interpret Chapter 90 as imposing obligations on owners of qualifying land in cities, villages, and towns. They part company, however, on whether the administration and enforcement mechanisms apply only to such land located in towns.[4]

¶ 28. Under our principles of statutory interpretation, either way of interpreting the statute has something to recommend that interpretation, but each is also problematic.

¶ 29. The City's interpretation makes sense of *most* of the provisions in Chapter 90, and requires the insertion of no additional language. However, the City fails to adequately address the language we quote above which states that "[t]he supervisors in their respective towns, the alderpersons of cities in their respective aldermanic districts, and the trustees of villages in their respective villages shall be fence viewers." *See* Wis. Stat. § 90.01. The City's position that this language simply expands the "pool from which towns could draw permissible 'fence viewers' to assist them" fails to come to grips with the "in their respective" aldermanic districts and villages language. In our view, this statutory language plainly states that city fence viewers are fence viewers only in their respective aldermanic districts and that village fence viewers are fence viewers only in their respective

---

tween their own and the adjoining premises in equal shares so long as either party continues to so occupy the lands . . . .

[4] The City sometimes makes passing comments suggesting that the City questions Chapter 90's applicability to land in cities (and villages), but the City never makes a straightforward argument, let alone a developed one, that land in cities or villages is excluded from Chapter 90.

villages. More broadly, we read § 90.01 as indicating that *all* fence viewers act as fence viewers *only* in their respective jurisdictions.

¶ 30. The Whites' interpretation, in contrast to the City's, fully accounts for the definition of fence viewers in Wis. Stat. § 90.01. However, the Whites' interpretation effectively inserts the words "city" and "village" into the numerous Chapter 90 provisions that refer only to towns.

¶ 31. The inconsistency of the use of the terms "cities" and "villages" in Chapter 90 leads us to agree with the circuit court that the chapter is ambiguous. We discern no way to reconcile the language referring to cities and villages and other language omitting reference to those entities. Thus, in the words of *Kalal*, "well-informed persons *should have* become confused" as to whether Chapter 90 requires cities and villages to administer and enforce Chapter 90 the same as towns. *See Kalal*, 271 Wis. 2d 633, ¶ 47.

### 3. Resolving Chapter 90's Ambiguity Based on Legislative History

¶ 32. Having identified ambiguity in Chapter 90, we turn to the pertinent legislative history. As the parties both note, that legislative history dates back to the 1800s. We explain below why we conclude that the legislative history supports the circuit court's view that Chapter 90 covers not only towns but also cities and villages.

¶ 33. Prior to 1875, what is now Chapter 90 contained no references to cities or villages. "Fence viewers" were defined as town officials *only,* namely, "[t]he overseers of highways, in the several towns." *See* Wis. Rev. Stat. ch. 17, § 21 (1871). As remains true

today, other provisions in the chapter also referred only to towns, namely, to fence viewers "of the town" and town clerks. *See* WIS. REV. STAT. ch. 17, §§ 1–23 (1871).

¶ 34. In 1875, the legislature made a significant change, adding a new section to the fence viewing law. *See* 1875 Wis. Laws, ch. 285, § 1. In language that is now only partially present in the chapter, that section changed the definition of "fence viewers" to include city and village fence viewers, while also requiring those fence viewers, in their respective jurisdictions, to discharge the same duties as town fence viewers do in theirs. *See id.* Specifically, this new section provided:

> The provisions of this chapter and of the acts amendatory thereto, shall extend to and include all out-lots occupied and used for agricultural purposes, and embraced in the plat of any incorporated city or village within this state, and the aldermen of the respective wards of such city, and the trustees of any such village, are hereby empowered, *and it is hereby made their duty, to discharge the duties imposed upon fence-viewers of the several towns, as provided by this chapter, in their respective wards and villages.*

*Id.* (emphasis added). To repeat, this language plainly extended administration and enforcement duties under what is now Chapter 90 to cities and villages.

¶ 35. Further, this 1875 act just as plainly is the source of the *current* definition of "fence viewers" in WIS. STAT. § 90.01. But what happened to the rest of the 1875 act language? In particular, what happened to the language providing that city and village fence viewers must "discharge the duties imposed upon fence-viewers of the several towns, as provided by this chapter"? As we now explain, that language was omitted from the first published version of the statutes

after the 1875 act, but we see no indication that this omission was intended to reverse course from the 1875 act's extension of the fence viewing law to cities and villages.

¶ 36. In 1875 and 1877, statutory revisers were appointed to collect and revise the laws for publication. *See* WIS. REV. STAT. 1878, Prefatory, at iii.[5] We will return to the revisers' work in a moment, but note now that the end result of that work was the 1878 Revised Statutes. In 1878, during a "special session," the legislature adopted the revisers' work by enacting, in one fell swoop, the 1878 Revised Statutes. *See id.*; 1878 Wis. Laws, ch. 2 (referencing the bill in a separate volume); *see also* 1878 Wis. Laws, ch. 3 (as to publication of the revised statutes).

¶ 37. As remains true today, the 1878 Revised Statutes contained the 1875 act language defining fence viewers to include city aldermen and village trustees in their respective jurisdictions. *See* WIS. REV. STAT. ch. 55, § 1389 (1878). The rest of the 1875 act language, however, was omitted from the 1878 Revised Statutes. *See* WIS. REV. STAT. ch. 55, §§ 1389–1403 (1878). That is, as most pertinent here, the 1878 Revised Statutes omitted the 1875 act language directing that city and village fence viewers have the "duty to discharge the duties imposed upon fence-viewers of the several towns, as provided by this chapter."

¶ 38. Thus, the 1878 Revised Statutes contained essentially the same ambiguity that Chapter 90 *still*

---

[5] "Prior to 1911, the statutes were published irregularly by a special act of the legislature, which usually designated a committee of attorneys to create a complete revision of the statutes." WISCONSIN LEGISLATIVE REFERENCE BUREAU, *Wisconsin Briefs from the Legislative Reference Bureau,* Brief 13–8, at 3 (Nov. 2014).

contains today, nearly 140 years later. That is, the definition of fence viewers included city and village fence viewers, but other provisions in the chapter (then Chapter 55) referred only to towns. Thus, our focus remains on whether the omission of 1875 act language in the 1878 Revised Statutes was intended to significantly change the law.

¶ 39. We conclude that no such change was intended. That is, we see nothing to indicate that, only three years after extending the fence viewing law to include cities and villages, the legislature meant to reverse course and change the law back so that it again applied only to towns in 1878. On the contrary, a revisers' note indicates that the version of the fence viewing law published in the 1878 Revised Statutes was intended to carry the 1875 act forward, albeit with some clarification.[6]

¶ 40. The pertinent revisers' note is not an easy read. It has some quirks, and we find parts of it ambiguous. On balance, however, we understand the note to show that the legislature's intent was to preserve the thrust of the 1875 act. We first quote the note, then discuss it further.

¶ 41. The note accompanies what was then WIS. REV. STAT. ch. 55, § 1389 (1878) (now WIS. STAT. § 90.01), which first codified the 1875 act's redefinition of fence viewers to include city and village fence viewers. The note reads:

---

[6] The revisers drafted accompanying notes for many of the laws codified in the 1878 Revised Statutes. *See generally* REVISERS' NOTES, *Report and Explanatory Notes of the Revisers of the Statutes, Accompanying the Bill to Revise the General Laws of Wisconsin* (1878); SUPPLEMENT TO THE REVISED STATUTES OF WISCONSIN, 1878, ch. 55, § 1389, at 301.

§ 1389 This [section] is composed from sec. 20, ch. 17, R.S. 1858 [the prior fence viewer definition referring only to towns], *and ch. 285, 1875,* and ch. 41, 1872.[7] It has been an open question whether the provisions of this statute on fences extended to cities and villages. *Brooks v. Allen,* 1 Wis., 127 [1853], held it does not apply to ornamental fences around town lots; but the opinion says: "It is possible, indeed, that a division fence between town lots may fall within the purview of the statute; but to do so, it must be a fence *of the kind and description* contemplated by the statute." This is what the revisers understand the law to have contemplated, until the passage of ch. 285, 1875; *and it is exactly what seems just. The owner of an inclosed lot in a city ought as much to contribute to a partition fence between himself and neighbor as the owner of an inclosed farm in a town. The one has no better right than the other to insist on inclosure, and deny the fair obligations of neighborhood.* But he should be required to contribute nothing to gratify the mere taste of his neighbor. Hence the next section [describing a legal and sufficient fence for purposes of the chapter] serves to limit his duty to providing only a fair inclosure, such as a farmer is bound to do. Other arrangements must be dependent on mutual agreement. *For this reason, and also because the language is indefinite and obscure, the words of ch. 285, 1875, which purported to extend but more probably limited the fence statute to "outlots occupied and used for agricultural purposes" are omitted.*

REVISERS' NOTES, *Report and Explanatory Notes of the Revisers of the Statutes, Accompanying the Bill to Revise the General Laws of Wisconsin,* WIS. REV. STAT. ch. 55, § 1389 (1878), at 111 (footnote added; some

---

[7] "[C]h. 41, 1872" is inconsequential for purposes here. It changed only which town officials were to serve as town fence viewers. *See* 1872 Wis. Laws, ch. 41, §§ 1–2.

emphasis in original; some emphasis added); *see also* SUPPLEMENT TO THE REVISED STATUTES OF WISCONSIN, 1878, ch. 55, § 1389, at 301.

¶ 42. The very start of the note indicates that then-WIS. REV. STAT. ch. 55, § 1389 (now-WIS. STAT. § 90.01) was meant to incorporate the 1875 act ("ch. 285, 1875"). Further, the note goes on to explain that fairness and logic dictate that fence owners in cities (and, we infer, villages) should be treated the same as fence owners in towns, provided that the fencing is of the type that the fence viewing law contemplates.[8] Finally, the note indicates that the revisers omitted some of the 1875 act language—namely, the language stating that the fence viewing law "shall extend to and include all out-lots occupied and used for agricultural purposes"—because that language might have been mistakenly read as a *limitation* on the 1875 act's application to cities and villages when in fact the opposite was intended, that is, the 1875 act was intended to apply the fence viewing law the same to cities and villages as it had previously been applied to towns.

¶ 43. It is true that the note is silent as to why the revisers also omitted the more significant 1875 act language with which we are most concerned here— namely, the language providing that city and village fence viewers must "discharge the duties imposed upon fence-viewers of the several towns." But we think this omission must have been inadvertent, or in any event not intended to effect a change from the 1875 act. The revisers' emphasis on the fairness and logic of

---

[8] One of the quirks of the note is that it fails to refer to villages. It appears that the only logical inference from then-WIS. REV. STAT. ch. 55, § 1389 and the accompanying note, read as a whole, is that this failure was merely an oversight.

treating city fence owners the same as town fence owners shows an expectation that the fence viewing law would be *enforced* in cities (and, we again infer, villages) the same as in towns. More broadly, it makes no sense to think that the revisers would have effectively gutted the thrust of the 1875 act without making any express mention of why they did so in their note, particularly given their mention of far finer points.

¶ 44. To repeat, the City's interpretation of the law acknowledges that Chapter 90 imposes fencing obligations on all owners of qualifying land, but apparently leaves the law unenforceable in cities or villages. We cannot square that interpretation with the revisers' note. Although briefly addressing the note in its reply brief, the City ignores pertinent language in the note. Nothing the City says about the note persuades us that our interpretation of the note is wrong.

¶ 45. In sum, for all of these reasons we conclude that § 1389 of the 1878 Revised Statutes—created from the 1875 act, and containing essentially the same definition of fence viewers that still exists today in Wis. Stat. § 90.01—was meant to carry forward the 1875 act's provisions requiring city and village fence viewers, in their respective jurisdictions, to discharge the same Chapter 90 duties as town fence viewers do in theirs.

### 4. Remaining City Arguments

¶ 46. The City makes assertions that we construe as raising the following argument: If Chapter 90 were truly meant to apply to cities and villages the same as to towns, the legislature would have amended the statutes by now to more clearly say so. We reject

this argument because the City provides no reason to think that the legislature's attention has ever been directed to the ambiguity that we address and resolve today. *See Green Bay Packaging, Inc. v. DILHR*, 72 Wis. 2d 26, 36, 240 N.W.2d 422 (1976) ("[L]egislative inaction . . . has been called 'a weak reed upon which to lean' and a 'poor beacon' to follow in construing a statute." (quoted source omitted)).

¶ 47. It may be that Chapter 90 disputes in cities and villages have rarely arisen and that, when they do, the affected cities or villages have assumed that Chapter 90 applies the same to them as to towns. We observe that the record contains a 1999 "UW Extension Local Government Center Fact Sheet" stating that "ch. 90 applies to land in cities and villages, as well as towns, where land is used for farming and grazing." This 1999 publication makes the unsurprising observation that "most agricultural land is in towns."

¶ 48. Finally, the City appears to make a minimally developed argument that the fence viewing law does not apply on the facts here *at all*. Relying on the revisers' note, and on the long-standing agricultural purpose of the fence viewing law, the City appears to argue that the law applies only when *both* adjoining properties are agricultural, a circumstance that is absent here; the Whites' complaint alleged that their neighboring properties are all "residential."

¶ 49. We disagree that the revisers' note, or the long-standing purpose of the fence viewing law, provides support for this City argument. Further, even if either did, Chapter 90 now expressly provides that only *one* of the adjoining properties must have the requisite agricultural use. As noted above, WIS. STAT. § 90.03 states:

**Partition fences; when required.** The respective occupants of adjoining lands used and occupied for farming or grazing purposes, *and the respective owners of adjoining lands when the lands of one of such owners is used and occupied for farming or grazing purposes,* shall keep and maintain partition fences between their own and the adjoining premises in equal shares . . . .

(Emphasis added.)

### *Conclusion*

¶ 50. For the reasons stated, we affirm the circuit court's order declaring that the City must assume Chapter 90 duties with respect to the Whites' land.

*By the Court.*—Order affirmed.