COURT OF APPEALS
DECISION
DATED AND FILED

January 20, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1385**

STATE OF WISCONSIN

Cir. Ct. No. **2021SC71**

IN COURT OF APPEALS
DISTRICT IV

GREG GRISWOLD,

PLAINTIFF-APPELLANT,

V.

KENDA TISDALE,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Grant County: ROBERT P. VAN DE HEY, Judge. *Affirmed*.

¶1 BLANCHARD, P.J.[1] Greg Griswold, pro se, appeals an August 2, 2022 order of the circuit court requiring Griswold to pay the $94.50 filing fee to

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

initiate this small claims action and $87.50 for the preparation of a transcript of proceedings.[2]  I affirm for reasons explained in the Discussion section below.

## BACKGROUND

¶2    In January 2021, Griswold filed a complaint with attached correspondence to initiate this small claims action.  Griswold claims that he is entitled to a money judgment of $504.99 based on Kenda Tisdale's alleged violation of WIS. STAT. § 90.03 for failing to "compensate Griswold the sum of at least $304.99" for cost of material necessary for Griswold to build a fence and "$200 for Griswold's labors expended in completing" the fence.[3]

---

[2] Griswold's appellate briefing contains many assertions that are difficult to understand as a legal argument or as part of a legal argument.  Any argument that I do not specifically address is denied because it is inadequately briefed and lacks discernable merit; I cannot attempt to develop legal arguments on his behalf.  *See* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court need not consider inadequately developed arguments).  I explain in a concluding footnote the numerous issues that I need not reach, whether or not Griswold has presented developed arguments regarding those issues.

[3] WISCONSIN STAT. § 90.03 is entitled "Partition fences; when required" and provides in its entirety:

> The respective occupants of adjoining lands used and occupied for farming or grazing purposes, and the respective owners of adjoining lands when the lands of one of such owners is used and occupied for farming or grazing purposes, shall keep and maintain partition fences between their own and the adjoining premises in equal shares so long as either party continues to so occupy the lands, except that the occupants of the lands may agree to the use of markers instead of fences, and such fences shall be kept in good repair throughout the year unless the occupants of the lands on both sides otherwise mutually agree.

"Chapter 90 of the Wisconsin Statutes regulates partition fences on farming and grazing land as defined in the chapter," and, more specifically, "provides fencing specifications, requires adjoining landowners to share costs, and provides dispute-resolution procedures for these landowners."  ***White v. City of Watertown***, 2017 WI App 78, ¶¶1-2, 378 Wis. 2d 592, 904 N.W.2d 374.

¶3      The complaint includes the following allegations. Griswold resides at 637 West Pine Road, Muscoda. Tisdale resides next door at 611 West Pine Road, Muscoda. Griswold is "the primary person negotiating with" Tisdale regarding a fence, which Griswold claims to have erected, "demarking the property line existing between Griswold's and Tisdale's real property."

¶4      Griswold completed and filed a "Petition for Waiver of Fees and Costs - Affidavit of Indigency" form, requesting that the circuit court waive all filing and service fees for him, claiming that he receives "medical assistance," "Food stamps/Foodshare," and "energy assistance." *See* WIS. STAT. § 814.29 (providing for potential waivers of payment of "any service or fee"). The court granted the petition through a form "Order on Petition for Waiver of Fees and Costs," making a finding that Griswold had shown indigency through his petition.

¶5      Tisdale filed an answer denying the claim and moved to dismiss.

¶6      The circuit court issued a scheduling order that set a date for a hearing on Tisdale's motion to dismiss. In addition, the scheduling order required Griswold to do the following before the hearing:

> provide proof of his alleged indigency, including documents verifying his receipt of public assistance, a copy of the trust agreement under which he has control of over 1,000 acres,[4] and a completed financial statement on the

---

[4] There is no dispute that the circuit court initially misread Tisdale's answer to state that the property at 637 West Pine Road consists of 1,030 acres; it is undisputed for purposes of this appeal that the answer accurately stated that the property at 637 West Pine Road consists of 1.030 acre. However, before the court rendered its challenged rulings it acknowledged its initial misreading. Further, after becoming aware of its initial error, the court did not alter its order requiring the information described in the scheduling order—instead, the court made clear that it would continue to require Griswold to produce this information.

> form attached hereto.[5]  All financial information provided will be sealed and only accessible by the court or by persons specifically authorized by the court.

*See* WIS. STAT. § 814.29(2) (providing in pertinent part that, after a circuit court has initially granted a waiver to a person from "giv[ing] security for costs or to pay any service or fee" under § 814.29(1), the court "may later require the payment of, or the giving of security for, costs, fees and service if the court determines that the person no longer meets any of the requirements under" § 814.29(1)).

¶7     Griswold submitted a copy of his eligibility for Supplemental Nutrition Assistance Program (SNAP) payments before the hearing, but never produced the other requested information such as a copy of the trust agreement giving him control 637 West Pine Road, Muscoda, and a completed Financial Disclosure Statement.

¶8     At the hearing in April 2021, the circuit court probed the basis for Griswold's claimed indigency status.  The court noted that Griswold had:  failed to provide the required information beyond the SNAP eligibility form; appeared to take the position in separate state court litigation that he had significant personal assets;[6] and claimed ownership rights in 637 West Pine Road.

---

[5] Attached to the scheduling order was a two-page form "Financial Disclosure Statement," with one additional page of instructions, for Griswold to fill out and return. Disclosures required on the form include automobiles owned, real estate and other real property interests held, and details regarding debts of others to the reporting person.

[6] The circuit court quoted the following from a brief that Griswold submitted in December 2020 to the circuit court in the separate case (Grant County Case No. 20-CV-216), in which Griswold referred to himself in the third person, with emphasis on pertinent language:

(continued)

4

¶9      Griswold took the position that the circuit court could not require him to provide further information on the indigency issue, given that Griswold had shown that he was entitled to receive public assistance.  Apparently ignoring the portion of the scheduling order providing that all financial information would be sealed, Griswold said, "I don't think it's anybody's business that I be forced to put on the public record matters that are supposed to be private, and I think we're getting completely off the track."

¶10     Tisdale, through counsel, argued in part that the complaint should be dismissed because "[r]ight now," at 637 West Pine Road,

> there [are] no animals there.  There is no possibility for any grazing on one acre.  There is no—there [are] dogs.  So that's all that's on the property as far as livestock ….  There is no grazing purposes that they would be used for it.  There is no farming operation going on there.

*See* WIS. STAT. § 90.05(1)(c) ("An owner, or the owner's heirs or assigns, are not obligated to build or maintain any part of a partition fence during any time when none of the adjoining lands is occupied for farming or grazing.").

---

> Griswold, at all times material hereto, believed that Miles had accepted Griswold' offer to utilize Miles' real estate expertise, subject matter, knowledge, and access to know what specific properties might come, quote, on the market, end of quote, *within Griswold's available $30,000 price range that would be suitable for use to store Griswold's approximate fleet of about 30 boats and 10 vehicles, including specifically mentioned particular over-width boats* that required at least 16 feet access to permit safe egress onto and off of the desired property.

At the hearing in this case, Griswold did not dispute that this was an accurate quotation from a brief that he had submitted in the other case, but he argued that the circuit court here was "misconstruing the context" of this submission, which Griswold said involved him acting as an agent for a trust.

¶11    Tisdale further argued for dismissal based on the ground that Griswold, who admitted that he did not own and was not a trustee for the trust that Griswold represented owns 637 West Pine Road, could not properly bring an action based on WIS. STAT. § 90.03.

¶12    On the same topic, the circuit court questioned whether Griswold is "a proper party to this action," and explained that the court needed "a copy of this Greg Griswold Irrevocable Trust Agreement" to help the court decide that issue. The court gave Griswold three additional weeks to submit the financial information required by the scheduling order and also to address the issue of whether Griswold could be a proper plaintiff in this case.

¶13    Griswold failed to submit the required information within the three-week deadline or thereafter. Instead, he filed a 13-page motion requesting that the circuit court recuse itself based on alleged "animus" and "bias," but which was devoted in large part to arguments on the merits of various issues.

¶14    In June 2021, the circuit court issued an order that:

- Vacated the previously ordered waiver of fees, "[d]ue to [Griswold's] lack of standing to bring this case, his failure to provide the financial information twice requested by the court, and his inability to satisfactorily explain why he claimed to have substantial assets in 2019 in Grant County Case No. 20-CV-216";

- Denied the motion for recusal;

- Dismissed the complaint "on its merits" based on the absence of proof that 637 West Pine Road "is occupied for farming or grazing," as required by WIS. STAT. § 90.05(1)(c); and

- Dismissed the complaint for the separate reason that Griswold had "fail[ed] to provide documentation within the three weeks" allowed after the hearing "showing he is a proper party plaintiff," and therefore he failed to show that he has "standing" to proceed.

- Awarded statutory costs to Tisdale of $100.[7]

¶15     In June 2021, Griswold filed a motion for reconsideration, which the circuit court denied by written order in July 2021.  In its denial order, the court stated in part,

> [T]he court reporter has been directed to prepare a transcript of the April 15, 2021 motion hearing and bill the county for the expense.  If the portion of the [circuit] court's order vacating the previously granted waiver of fees is reversed, [Griswold] will not be ordered to reimburse the county.  It is not this court's intent to hinder the Court of Appeals' ability to review this matter.

Also in July 2021, Griswold filed a second motion for reconsideration.  In August 2021, the court indicated that it would deny that motion, but allowed Tisdale an opportunity to address the court's reliance at the hearing on court record information that was familiar to Griswold but not familiar to Tisdale.  Also in August 2021, Griswold filed a "renewed motion" for recusal.

¶16     In October 2021, the circuit court denied the second motion for reconsideration and the "renewed motion" for recusal.  Also in October 2021, Griswold filed a third motion for reconsideration, which the court denied in December 2021.  In the order denying the third motion for reconsideration, the court stated in part the following:

> No further motions will be addressed if not accompanied by the requested documentation.  Judgment is hereby granted in favor of the defendant for statutory costs in the amount of $100.00.  Grant County will assess the previously ordered $94.50 filing fee to Griswold, and the transcript preparation fee, if he is unsuccessful on appeal.

---

[7] Griswold does not challenge the statutory costs in this appeal.

¶17    Griswold filed an appeal (No. 2021AP2117), followed by a 67-page merits brief in March 2022. Tisdale filed a responsive brief in April 2022. But in May 2022, Griswold filed a motion for voluntary dismissal of appeal No. 2021AP2117. This court ordered the appeal dismissed in May 2022, and remittitur occurred in July 2022.

¶18    On August 2, 2022, following remittitur, the circuit court entered an order requiring Griswold to pay the $94.50 filing fee and $87.50 transcript preparation fee. Griswold appeals this order.

**DISCUSSION**

¶19    Griswold argues that he is entitled to waiver of the filing fee and transcript costs related to his appeal under the two-part test established by the Wisconsin Supreme Court in *State ex rel. Girouard v. Circuit Court for Jackson Cnty.*, 155 Wis. 2d 148, 157, 159, 454 N.W.2d 792 (1990) (interpreting WIS. STAT. § 814.29), because he showed the circuit court that he was indigent and because he presented a claim upon which relief can be granted. I affirm because Griswold's complaint failed to state a claim upon which relief can be granted, specifically, the complaint and its attachments make clear that 637 West Pine Road was not occupied for farming or grazing at the time the complaint was filed. *See* WIS. STAT. § 90.05(1)(c) ("An owner, or the owner's heirs or assigns, are not obligated to build or maintain any part of a partition fence during any time *when none of the adjoining lands is occupied for farming or grazing*.") (emphasis added). That is, the complaint sets forth the entire factual basis for application of the bar imposed by § 90.05(1)(c), and therefore the circuit court could both properly dismiss the complaint and reverse its initial grant of the waiver because Griswold failed to state a claim upon which relief may be granted.

¶20 "[T]he fee waiver statute's standard for deciding whether a proposed action states a claim is the same standard that is applied when considering a motion to dismiss in an ordinary civil case for '[f]ailure to state a claim upon which relief can be granted.'" *State ex rel. Luedtke v. Bertrand*, 220 Wis. 2d 574, 578, 583 N.W.2d 858 (Ct. App. 1998) (quoting WIS. STAT. § 802.06(2)(a)6.), *aff'd by an equally divided court*, 226 Wis. 2d 271, 594 N.W.2d 370 (1999), *superseded by statute on other grounds*; *see also State v. Boruch*, No. 2018AP152, unpublished slip op. ¶¶17-22 (WI App May 19, 2020).

¶21 A proposed action is subject to dismissal when it fails to state a claim upon which relief may be granted, which occurs when it is legally insufficient. *See Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693. A claim is legally insufficient "'only if it is quite clear that under no condition can a plaintiff recover.'" *Luedtke*, 220 Wis. 2d at 578 (quoted source omitted). Stated differently, an action fails to state a claim upon which relief may be granted only if the facts set forth in the action fail to reveal an apparent right to recovery under any legal theory. *See Strid v. Converse*, 111 Wis. 2d 418, 423, 331 N.W.2d 350 (1983). This presents an issue of law that I review de novo. *See State ex rel. Hansen v. Circuit Ct. for Dane Cnty.*, 181 Wis. 2d 993, 998, 513 N.W.2d 139 (Ct. App. 1994).

¶22 Notably for purposes of this appeal, "[w]hile a complaint need not specifically deny the existence of any and all affirmative defenses, it can, by inadvertence or otherwise, create or concede an affirmative defense fatal to its validity." *Thomas v. Kells*, 53 Wis. 2d 141, 145, 191 N.W.2d 872 (1971) (footnote omitted); *see also* 5 Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1215 (3d ed. 2015) ("If a plaintiff does plead particulars, and they show [the

plaintiff] has no claim, then the plaintiff has pleaded himself [or herself] out of court.").

¶23 In the following passages in his complaint, Griswold made clear that he had allegedly erected what he called "a suitable grazing livestock fence" purely *in anticipation* of grazing animals in the future and that no farming or grazing activities were then taking place:

- In November 2020, "Griswold acquired the necessary fencing 'cattle panels and T-Posts,' and constructed a livestock fence suitable for grazing Griswold's *intended* sheep and geese *intended to become acquired the next summer*, beginning shortly after the end of October, and which was thereafter finally completed no later than before the ground would freeze this winter, as of the last letter written Tisdale on November 10th, 2020."

- "Griswold has constructed a sufficient 'cattle panel' fence between Griswold's and Tisdale's parcels, along the respective approximate property line sufficient as to *thereafter be able to safely contain grazing livestock including sheep and geese beginning with this next summer's season ….*"

- "Tisdale was/is required to share equally in the expense of constructing and maintaining a proper fence between the two respective subject parcels of property, sufficient *as to permit Griswold to graze his intended sheep and geese beginning the next summer's season ….*"

- "Tisdale owes Griswold the sum of $304.99, for what remains as was/is Tisdale's fair share of the materials required to construct what was Tisdale's portion of the sufficient fence required *so as to permit Griswold's grazing of livestock intended the next summer*."

¶24 Further, attached to the complaint was correspondence between Griswold and Tisdale. The correspondence confirms the allegations in the complaint that Griswold's claim is based entirely on his alleged construction of what Griswold called a "grazing livestock fence" for purpose of holding grazing animals only in the future:

- Griswold: "[M]y plans *in the near future* include establishing a grazing 'flock' to take advantage of the productivity of my parcel's ability to grow forage .…"

- Griswold: "… so as to insure that my *future livestock* do not offend trespassing across the property lines so defined .…"

- Tisdale: "[S]ince you currently do not own any sort of 'grazing animal' at the moment, please kindly inform me as to what kind of livestock will be grazing your parcel."

- Griswold: "… what will be my *future utilization* of my own parcel's ability to support grazing livestock expected to include sheep, lambs and goats, as well as possibly geese .…"

- Griswold: "… particularly now this final more permanent fence's anticipated containment of my *future grazing livestock* .…"

¶25 It is difficult to discern a clear argument on appeal from Griswold on this issue. At one point he states: "'[F]encing' prior to 'grazing' is in fact, 'a required farming activity,'" such that Griswold was "actively farming" even though no animals were yet grazing. I reject whatever argument Griswold may intend to make because he fails to explain what he specifically means by the phrase "required farming activity" or more generally what relevance this concept would have to the bar imposed by WIS. STAT. § 90.05(1)(c).

¶26 In the circuit court, Griswold said at one point:

> [T]he statute does not have any contemplation that I have to
> have animals before I have a fence. That makes no sense. I
> used the money to put up the fence that I need her contribution
> so that I can buy my livestock, so it is a question of timing.

Even if Griswold had included these statements in his appellate briefing, at best they amount to the following assertion: it would be an absurd result, which the legislature could not have intended in enacting WIS. STAT. § 90.05(1)(c), to require landowners who seek to evoke Chapter 90 of the Wisconsin Statutes to

11

identify adjoining lands that are currently "occupied for farming or grazing." I see no absurdity. To the contrary, whatever its merits as a policy choice, it would be one rational choice of the legislature to reserve the partition procedures for ongoing farming or grazing operations, and not for mere plans to farm or graze, as Griswold describes in the complaint. It does not matter that the legislature could have made other rational policy choices that might have altered or eliminated § 90.05(1)(c) in favor of someone in Griswold's alleged position.

¶27 Under the governing legal standards, summarized above, I do not resolve this issue solely based on Griswold's admission to the circuit court at the hearing that he did not in fact have grazing animals at 637 West Pine Road—even by the time of the hearing, much less when he filed the complaint—because his plan was to use the money he would win through a judgment in this lawsuit to buy the animals that would go inside fencing. It is true that Tisdale essentially made an argument for summary judgment on this ground, and presented the same argument in her combined answer and motion to dismiss. But the issue is whether Tisdale stated a claim upon which relief may be granted, which is a determination that must be based on the pleadings alone.

¶28 At the same time, my interpretation of WIS. STAT. § 90.05(1)(c), which to repeat is not meaningfully disputed by Griswold, provides an independent ground to affirm the circuit court's challenged rulings. As the court pointed out in addressing Griswold's second motion for reconsideration, it dismissed this case based on Griswold's admission to facts under which he could not overcome the bar created by § 90.05(1)(c). The court further noted that Griswold's interpretation of § 90.05(1)(c) "is inconsistent with the clear statutory language and the filing of a meritless lawsuit is grounds to deny a fee waiver petition." In a similar vein, in addressing the third reconsideration motion, the

court deemed this action to be "frivolous" based on the absence of evidence that could overcome the bar in § 90.05(1)(c).

¶29    Griswold repeatedly notes that the transcript of the hearing in this case was ordered by the circuit court and not by Griswold, but he does not persuade me that this represents a problem.  As summarized above, the court was careful to note that the county would be responsible for the transcript cost unless Griswold were successful on appeal, which he has not been, in which case Griswold would be responsible.  The court anticipated that Griswold would appeal, he did appeal, and the transcript was necessary for this court's review of the appeal that Griswold has pursued.  Griswold fails to provide a basis for reversal based on the fact that the court ordered the transcript and explained the condition under which Griswold would be responsible for paying it.

¶30    Partly through a series of short, sarcastic footnotes, Griswold may mean to suggest that an independent ground for reversal would be that the circuit court should have recused itself, based on either or both of his two recusal motions.  If this is intended as an argument it would be wholly without merit.  Perhaps Griswold's most clearly articulated point is to question the court's impartiality in providing Tisdale with an opportunity to address court records in other cases involving, and therefore familiar to, Griswold and not familiar to Tisdale.  But Griswold completely fails to explain how the court's approach on this issue demonstrated partiality, much less how the approach could have prejudiced him.  I make a related observation based on my review of the record as a whole.  As far as I can see at every turn in this long-litigated small claims case the court demonstrated exceptional patience and equanimity in the face of Griswold's verbose, piecemeal, and often unclear advocacy.

13

¶31     For all these reasons, the circuit court properly vacated the previously ordered waiver of fees, denied the motion for recusal, and dismissed the complaint on its merits.[8]

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] In light of the other dispositive issues discussed in the text, I need not reach the following issues referenced by the parties and I assume without deciding that Griswold could prevail on each:  (1) whether Griswold showed that was indigent; (2) whether Griswold's failure to provide the financial information twice requested by the circuit court, after the court noted information raising questions about his claimed indigent status, provided an independent ground to reverse the initial waiver determination; (3) what the parties characterize as Griswold's "standing," or lack thereof, to bring a claim under Chapter 90, based on his legal status relative to 637 West Pine Road; and (4) given the timing of and substance of Griswold's three reconsideration motions and his dismissal of his first appeal, whether (a) this court has jurisdiction to review this appeal or (b) Griswold is, in Tisdale's words, "collaterally estopped" from bringing this appeal.  It is far from clear to me that Griswold would prevail on any or all of these issues, but I make these assumptions in the interest of judicial economy. *See **State v. Waste Mgmt. of Wis., Inc.***, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978) ("An appellate court is not a performing bear, required to dance to each and every tune played on an appeal.").